United States District Court
Northern District of California

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6    HILLIARD CHAPPELL, III,                    CASE NO.  4:20-cv-05642 YGR

7                Plaintiff,                     ORDER GRANTING IN PART AND
                                               DENYING IN PART MOTION FOR
8         v.                                    SUMMARY JUDGMENT

9                                              Re: Dkt. No. 18

10   ANDREW SAUL, COMMISSIONER OF SOCIAL
     SECURITY,
11
                Defendant.
12

13        Now before the Court is plaintiff Hilliard Chappell, III's motion for summary judgment,

14   which defendant the Commissioner of Social Security opposes.  For the reasons set forth below,

15   the Court GRANTS the motion in part and DENIES it in part.

16   I.   BACKGROUND

17        A.   Procedural History

18        Chappell is a fifty-two-year-old man who lives in a homeless shelter.  AR 31, 51.  He has a

19   high-school education and previously worked as a barber.  AR 21, 24, 43-44.  He claims to suffer

20   from a number of ailments that negatively impact his ability to work, including pain, numbness,

21   and swelling arising from bilateral shoulder injuries; back injuries; gout; surgery and hardware

22   placement in his leg; and right Achilles' tendon injury.  AR 27.  These ailments are documented in

23   the medical evidence in the record.

24        On January 25, 2017, Chappell protectively filed applications for Disability Insurance

25   Benefits ("DIB") and supplemental security income ("SSI") pursuant to the Social Security Act.

26   AR 198-214.  In these applications, Chappell alleged disability beginning on June 1, 2002.  AR

27   199, 206.  The Social Security Administration denied his application initially on June 7, 2017, and

28   on reconsideration on October 12, 2017.  AR 127-47.  On September 13, 2018, Chappell appeared

1    with his attorney and testified before an administrative law judge ("ALJ").  AR 38-73.  In a

2    decision dated July 30, 2019, the ALJ found that, although Chappell suffers from several severe

3    physical impairments, he has not been disabled within the meaning of the Social Security Act

4    since the alleged onset date because he could perform two jobs given his residual functional

5    capacity ("RFC") for a reduced range of light work.  AR 18-33.  The ALJ's decision became the

6    final decision of the Commissioner when the Appeals Council denied review on June 19, 2020.

7    AR 1-6.

8         On August 13, 2020, Chappell filed this action against the Commissioner, seeking judicial

9    review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

10        Chappell now moves for summary judgment and for an order reversing the

11   Commissioner's conclusion that he has not been under a disability and remanding with

12   instructions to award benefits pursuant to 42 U.S.C. § 405(g).  Docket No. 18.  The Commissioner

13   opposes Chappell's motion.  Docket No. 19.

14        **B.    Hearing before the ALJ**

15        On September 13, 2018, Chappell appeared with his attorney and testified before the ALJ.

16   AR 38-73.  Chappell testified that his surgery on his right shoulder was still pending, AR 49; his

17   ankle and leg pain limits him from standing for long periods of time, AR 49; he has swelling and

18   pain in his ankle up to his knee, AR 50; he has back pain and difficulty sitting, AR 50; his

19   symptoms fluctuate by the day, AR 50-1; he cannot stand or walk for more than an hour or two at

20   the most, AR 58; once he is experiencing a high level of pain from being on his feet, he cannot do

21   much more that day and his day effectively ends, AR 59; it takes him half an hour or longer to

22   walk a mile, AR 60-61; the pain he experiences during gout episodes is severe and causes swelling

23   and pain that renders him bedridden for a week, AR 62; and he gets a little depressed, AR 66.

24        The ALJ's vocational expert testified, in response to the ALJ's hypothetical, that two

25   occupations exist (callout operator and telephone quotation clerk) that suit the characteristics of a

26   claimant that the ALJ described, but she noted that two absences per month would preclude

27   competitive employment.  AR 69.  She also opined that an additional fifteen-minute break each

28   day would preclude continued employment.  AR 70.

United States District Court
Northern District of California

1

   **C.     Psychological evaluation by Dr. Martin**

2        In October 2018, Chappell underwent a psychiatric evaluation by Dr. Martin.  AR 343.

3   Chappell related having a history of depression, anxiety, and chronic pain.  AR 343.  Dr. Martin's

4   "diagnostic impression" of Chappell was that he suffered from unspecified anxiety disorder,

5   unspecified depressive disorder, and unspecified somatic symptom.  AR 346.  He found that

6   Chappell's impairments would result in "moderate" limitations in certain work-related functions

7   and contexts.  AR 346-49.

8        **D.     The ALJ's findings**

9        On July 30, 2019, the ALJ issued a decision concluding that Chappell "has not been under

10  a disability within the meaning of the Social Security Act from June 1, 2002, through the date of

11  this decision" because he could perform certain jobs given his RFC for a reduced range of light

12  exertion work.  AR 18-33.  Specifically, the ALJ made the following findings at each step of the

13  five-step sequential evaluation process for determining whether an individual is disabled:

14       At step one, the ALJ considered whether Chappell is engaging in substantial gainful

15  activity, and he determined that he has not engaged in substantial gainful activity since the alleged

16  onset date of June 1, 2002.  AR 23-24.

17       At step two, the ALJ considered whether Chappell has a medically determinable

18  impairment that is "severe" or a combination of impairments that is "severe," and he concluded

19  that Chappell suffers from the following severe impairments: "disfunction of major joints;

20  degenerative lumbar spine disorder; and disorders of muscle, ligament, and fascia."  AR 24-26.

21       The ALJ found that Chappell has other physical and mental medically determinable

22  impairments but determined that they are not severe.  Specifically, the ALJ acknowledged that

23  Chappell "alleges gout" and that Chappell's medical records were consistent with Chappell

24  suffering from gout.  AR 24.  The ALJ did not find that Chappell's gout constitutes a "severe"

25  impairment because, in his view, "the record demonstrates that the gout is treated conservatively

26  with medication" and because "the record does not establish that these conditions cause more than

27  minimal limitation in the claimant's ability to perform basic work activities."  AR 24.

28

3

1    The ALJ also noted, based on Dr. Martin's opinions, that "the claimant has the medically

2    determinable mental impairments of unspecified anxiety disorder, unspecified depressive disorder,

3    and unspecified somatic symptom and related disorder," but he found that these mental

4    impairments were not severe because they "cause no more than 'mild' limitation in any of the

5    functional areas," AR 25, and "the record does not establish that these impairments cause more

6    than minimal limitation in the claimant's ability to perform basic mental work activities."  AR 24.

7        At step three, the ALJ considered whether Chappell's impairments or combination of

8    impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20

9    CFR Part 404, Subpart P, Appendix I. 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

10   416.925, and 416.926, and he concluded that they do not meet such criteria.  AR 26.

11       At step four, the ALJ considered whether Chappell has the RFC to perform the

12   requirements of his past relevant work, and he concluded that Chappell has no past relevant work.

13   AR 31.

14       At step five, the ALJ considered whether Chappell is able to do any other work

15   considering his RFC, age, education, and work experience, and he found that Chappell has the

16   RFC "to perform light work" except that he can "frequently lift and carry ten pounds; sit for six

17   hours; stand and walk for four hours; push and pull less than ten pounds; can frequently use foot

18   controls with the left foot; occasionally reach in all directions bilaterally; occasionally climb

19   ramps, stairs, ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl."  AR 26-31.

20   In light of this finding, and the vocational expert's testimony, the ALJ concluded that Chappell

21   could perform work that existed in significant numbers in the economy, specifically as a callout

22   operator or as a telephone quotations clerk, and that he, therefore, is and has not been disabled.

23   AR 32.

24       When determining Chappell's RFC, the ALJ acknowledged that Chappell "alleges the

25   inability to work due to pain, numbness, and swelling arising from bilateral shoulder injuries; back

26   injuries (facet arthropathy, disc deterioration, disc protrusion in the lower back, foraminal stenosis,

27   and joint hypertrophy in the cervical spine); gout; surgery and hardware placement to treat a right

28   femur fracture in 1994 and a left ankle fracture in 1980; a right Achilles tendon injury; diabetes;

and fatty liver." AR 27. The ALJ also acknowledged that Chappell "alleges that his impairments limit his abilities to sit, stand, and walk to 45 minutes at a time per activity." AR 27. The ALJ further acknowledged that Chappell "testified that every two to three weeks, his gout manifests in pain and swelling in his bilateral lower extremities from the toes to the knees and effectively renders him bed-ridden for a week and dependent on crutches," and that "his daily activities fluctuate depending on whether or to what degree he is in pain." AR 27.

Although the ALJ found that Chappell's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he nevertheless concluded that Chappell's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 27. The ALJ did not specify which portions of Chappell's statements regarding his symptoms contradicted the medical evidence, or why the medical evidence contradicted Chappell's testimony. *See* AR 27-31.

## II.    LEGAL STANDARD

The Social Security Act defines "disability" as the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* § 1382c(a)(3)(B).

"To determine whether a claimant is disabled, the Commissioner conducts a five-step sequential inquiry. In conducting this inquiry, the Commissioner asks five questions in order until a question is answered in such a way that the claimant is conclusively determined disabled or not." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (internal citation omitted). "The burden of

1 | proof is on the claimant at steps one through four, but shifts to the Commissioner at step five."

2 | *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

3

> The five-step process for disability determinations begins, at the
> first and second steps, by asking whether a claimant is engaged in
> "substantial gainful activity" and considering the severity of the
> claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If
> the inquiry continues beyond the second step, the third step asks
> whether the claimant's impairment or combination of impairments
> meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1
> and meets the duration requirement. *See id.* § 416.920(a)(4)(iii).
> If so, the claimant is considered disabled and benefits are awarded,
> ending the inquiry. *See id.* If the process continues beyond the
> third step, the fourth and fifth steps consider the claimant's
> "residual functional capacity" in determining whether the claimant
> can still do past relevant work or make an adjustment to other
> work. *See id.* § 416.920(a)(4)(iv)-(v).

11 | *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).

12 | Under 42 U.S.C. § 405(g), a court has the authority to review the Social Security

13 | Administration's disability determinations; it provides, in relevant part, the "court shall have

14 | power to enter . . . a judgment affirming, modifying, or reversing the decision of the

15 | Commissioner of Social Security, with or without remanding the cause for a rehearing." "An

16 | ALJ's disability determination should be upheld unless it contains legal error or is not supported

17 | by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation

18 | omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance;

19 | it is such relevant evidence as a reasonable person might accept as adequate to support a

20 | conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal

21 | quotation marks omitted). Courts "must consider the entire record as a whole, weighing both the

22 | evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

23 | may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and

24 | quotation marks omitted).

25 | **III.   DISCUSSION**

26 | Chappell moves for summary judgment and an order reversing the Commissioner's denial

27 | of benefits and remanding with instructions to award benefits. Chappell argues that he is entitled

28 | to the relief he requests because the ALJ erred in finding him not disabled for two reasons: (1) the

United States District Court
Northern District of California

ALJ erred at step two of the sequential evaluation by finding his mental impairments not severe even though Dr. Martin's opinions establish that those impairments caused moderate limitations in functions that are relevant to his ability to work; and (2) the ALJ erred by failing to provide "clear and convincing reasons" for rejecting his testimony about his symptoms.  The Court addresses these arguments in turn.

> **A.     Whether the ALJ erred at step two by failing to find that Chappell's mental impairments are severe**

At step two of the sequential evaluation process, the ALJ is tasked with determining which impairments, alone or in combination, meet the durational and severity requirements.  *Smolen*, 80 F.3d at 1290; 20 C.F.R. §§ 404.1521(a).  "Under Step 2, the applicable regulations state that '[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities.'"  *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) (quoting 20 C.F.R. § 404.1521(a)).  "Basic work activities" are defined as including such capabilities as use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6).  When determining whether a claimant is disabled or his impairments are severe, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

Chappell argues that the ALJ erred in finding that his mental impairments were not severe at step two, and that this error was not harmless because it affected the ALJ's analysis at steps four and five and ultimately led to the ALJ's finding that he is not disabled.  Chappell contends that Dr. Martin's opinions support a finding that his mental impairments are severe, but the ALJ rejected these opinions without providing "clear and convincing reasons," which he argues constitutes legal error.  Specifically, Chappell argues that Dr. Martin described his mental impairments as causing "moderate" limitations in several areas related to workplace performance, which Chappell

1    contends warrants a finding that his mental impairments are "severe" within the meaning of the

2    Social Security Act.  Docket No. 18 at 10-12; Docket No. 20 at 3-4.

3           The Court disagrees with Chappell and concludes that the ALJ did not commit legal error

4    in his evaluation of Chappell's mental impairments or of Dr. Martin's opinions at step two.

5           Dr. Martin's "diagnostic impression" of Chappell was that he suffered from unspecified

6    anxiety disorder, unspecified depressive disorder, and unspecified somatic symptom.  AR 346.

7    Dr. Martin opined that Chappell had "*moderate*" limitations in terms of maintaining regular

8    attendance in the workplace; performing work activities on a consistent basis; completing a

9    normal workday or workweek without interruptions resulting from his psychiatric condition;

10   interacting with coworkers and with the public; and with the ability to deal with the usual stresses

11   encountered in a competitive work environment.  AR 346.  Dr. Martin further opined that

12   Chappell's ability to understand, remember, and carry out instructions was affected by his mental

13   impairments and that the impact of his impairments was "moderate" in the context of making

14   judgments on simple and complex work-related decisions. AR 348.  Dr. Martin further opined that

15   Chappell's mental impairments would moderately affect his ability to interact appropriately with

16   others in the workplace, and to respond appropriately to "usual work situations and to changes in

17   routine."  AR 349.  Notably, the form that Dr. Martin filled out defines "moderate" as "more than

18   a slight limitation in this area but the individual is still able to function satisfactorily."  AR 348.

19   Further worthy of note is that the form that Dr. Martin filled out contains spaces for him to

20   "identify the factors" that "support [each] assessment," but Dr. Martin left those spaces blank.  AR

21   348.

22          The ALJ considered and weighed Dr. Martin's opinions in determining whether the

23   combination of all of Chappell's impairments affected his ability to function in the workplace, and

24   he gave clear reasons supported by the record to justify the weight he accorded to Dr. Martin's

25   testimony, such as the fact that "Dr. Martin did not provide a basis" for some of his assessments as

26   to Chappell's "moderate" mental limitations.  *See* AR 25-26.  As noted, Dr. Martin left blank the

27   spaces in the form he filled out where he was required to "identify the factors" that "support" his

28   assessments of Chappell; Chappell does not acknowledge this fact in his briefs.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Chappell contends that the ALJ committed legal error by not finding, based on Dr.

2  Martin's opinions, that his mental impairments are severe.  The Court is not persuaded for two

3  reasons.  First, Chappell has not shown that Dr. Martin's opinions compel a finding that his mental

4  impairments are severe.  As noted, Dr. Martin opined that the impact of Chappell's mental

5  impairments was "moderate" in certain areas, but Dr. Martin's form defines "moderate" as "more

6  than a slight limitation in this area but the individual is still able to function satisfactorily."  AR

7  348.  This definition of "moderate" appears to fall within the scope of a "not severe" impairment

8  under the applicable Social Security regulations, which provide that an impairment or combination

9  of impairments is "not severe" if the evidence establishes a slight abnormality that would have "no

10  more than a minimal effect on an individual's ability to work."[1]  *Smolen*, 80 F.3d at 1290 (citation

11  omitted).  Indeed, an impairment that still allows one to "function satisfactorily" seems to be

12  consistent with an impairment that has "no more than a minimal effect on an individual's ability to

13  work."  Chappell does not acknowledge the fact that Dr. Martin's form defines "moderate" in a

14  way that appears consistent with the definition of "not severe." Accordingly, the Court disagrees

15  with Chappell that the ALJ was required to find based on these opinions that Chappell's mental

16  impairments are "severe."  Second, as noted, the ALJ provided clear and convincing reasons for

17  according certain weight to Dr. Martin's opinions.  Chappell does not acknowledge or address any

18  of the reasons provided by the ALJ for his treatment of Dr. Martin's opinions; thus, the Court

19  finds no basis to conclude that such reasons are legally insufficient.

20  Accordingly, the Court concludes that Chappell has not shown that the ALJ erred at step

21  two in not finding that his mental impairments are severe, and it **DENIES** Chappell's motion for

22  summary judgment as to this issue.

23

24

25

26  [1] By contrast, Dr. Martin's worksheet defines "marked" as "[t]here is a serious limitation in this area.  There is a substantial loss in the ability to effectively function."  AR 348.  Had
27  Dr. Martin used the word "marked" to describe the limitations caused by Chappell's mental impairments, which he did not, then Chappell's argument that Dr. Martin's opinions warrant a finding that his mental impairments fall within the definition of "severe" would be more
28  persuasive.

1

2

**B.      Whether the ALJ erred by failing to provide "clear and convincing" reasons for rejecting Chappell's subjective testimony as to his symptoms**

3       "When an Administrative Law Judge (ALJ) determines that a claimant for Social Security

4  benefits is not malingering and has provided objective medical evidence of an underlying

5  impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may

6  reject the claimant's testimony about the severity of those symptoms only by providing specific,

7  clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th

8  Cir. 2015).  "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a

9  claimant's testimony by simply reciting the medical evidence in support of his or her residual

10 functional capacity determination." *Id.*  Instead, to satisfy the "clear and convincing reasons"

11 requirement, the ALJ must "specify which testimony she finds not credible, and then provide clear

12 and convincing reasons, supported by evidence in the record, to support that credibility

13 determination." *Id.*  A failure to do so constitutes "legal error," *id.*, and this error is not harmless

14 where the ALJ's failure to specify his or her reasons for rejecting claimant testimony deprives the

15 courts of the opportunity to review those reasons "meaningfully," *id.* at 492.

16       Chappell argues that, because the ALJ did not find that he was malingering and also found

17 that the symptoms he described during his testimony could reasonably be caused by his medically

18 determinable impairments, the ALJ was required to provide "clear and convincing reasons" for

19 rejecting his symptom testimony.  Chappell contends that the ALJ's failure to provide "clear and

20 convincing reasons" for rejecting his symptoms testimony was legal error that was not harmless

21 because, if the ALJ had considered this testimony, then the ALJ would have been required to find

22 that he is incapable of sustaining either of the two occupations that the ALJ determined, at step

23 five, that he could perform.

       After carefully reviewing the record, the Court agrees with Chappell.

24       Chappell testified during his hearing with the ALJ that the pain he experiences as a result

25 of his medically determinable impairments significantly affects his ability to stand, walk, and lift,

26 and that, sometimes, it renders him bedridden.  Specifically, Chappell testified that he can lift

27 perhaps ten pounds, AR 64; he has trouble getting out of bed in the morning because of pain, AR

28 58; he can stand for an hour to two hours at most before the pain "kicks in" and he needs to sit

1    down for an hour or two, AR 58-60; he can walk slowly for about a mile or approximately 45

2    minutes before the pain begins and he has to stop exerting for the day, AR 60-61; and he

3    experiences "tremendous" gout-related pain when he has a gout episode every two to three weeks,

4    AR 50, which forces him to be bedridden for an entire week, AR 62.

5         Although the ALJ did not find that Chappell was malingering, he nevertheless rejected

6    Chappell's testimony regarding his symptoms based on the following conclusory grounds:

7              After careful consideration of the evidence, the undersigned finds
              that the claimant's medically determinable impairments could
8              reasonably be expected to cause the alleged symptoms.  However,
              the claimant's statements concerning the intensity, persistence and
9              limiting effects of these symptoms are not entirely consistent with
              the medical evidence and other evidence in the record for the
10             reasons explained in this decision.

11   AR 27.  The ALJ did not identify the portions of Chappell's testimony that he did not find

12   credible, nor did he specify the medical evidence that he believed was inconsistent with

13   Chappell's testimony.  The ALJ simply proceeded to analyze the medical evidence that formed the

14   basis of his RFC finding.

15        As noted, to satisfy the "clear and convincing reasons" requirement for rejecting the

16   testimony of a claimant who is not found to be malingering and whose symptoms could

17   reasonably be derived from his medically determinable impairments, "[t]he ALJ must state

18   specifically which symptom testimony is not credible and what facts in the record lead to that

19   conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted).  Here, the ALJ failed to do so.  The

20   ALJ's opinion does not identify the testimony that he did not find credible, nor does it identify the

21   evidence that the ALJ believed was inconsistent with Chappell's testimony.   The ALJ's only

22   explanation for not crediting Chappell's symptom testimony is the conclusory statement that "the

23   claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

24   are not entirely consistent with the medical evidence and other evidence in the record," AR 27, but

25   that is not enough.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir.

26   2014) (holding that "[a]n ALJ's 'vague allegation' that a claimant's testimony is 'not consistent

27   with the objective medical evidence,' without any 'specific findings in support' of that conclusion

28   is insufficient for our review" and constitutes legal error).  Further, while the ALJ's opinion here

1    generally describes and analyzes the medical evidence that formed the basis of his RFC finding,

2    that is insufficient to satisfy the "clear and convincing reasons" requirement.[2]  *See Brown-Hunter*,

3    806 F.3d at 488-89 ("[A]n ALJ does not provide specific, clear, and convincing reasons for

4    rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her

5    residual functional capacity determination.").

6         The ALJ's failure to specify the reasons for rejecting Chappell's symptom testimony is

7    particularly problematic because an ALJ must tread carefully when rejecting claimant testimony

8    regarding pain.  The Ninth Circuit has repeatedly emphasized that,

9         Unlike most medical conditions capable of supporting a finding of
     disability, pain cannot be objectively verified or measured.  While
10        the physical conditions causing pain can usually be objectively
     ascertained, the pain itself cannot; the very existence of pain is a
11        completely subjective phenomenon.  So is the degree of pain: The
     amount of pain caused by a given physical impairment can vary
12        greatly from individual to individual.  To make matters more
     difficult, ordinary language permits the expression of only the most
13        rudimentary distinctions among levels of pain: A claimant can
     testify that his leg hurts a little, or a lot, or somewhere in between,
14        but such descriptions provide only a dim insight into the claimant's
     subjective experience of pain.
15

16   *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  In light of these realities, the Ninth Circuit has

17   held that an "ALJ may not reject subjective symptom testimony . . . simply because there is no

18   showing that the impairment can reasonably produce the degree of symptom alleged."  *Smolen*, 80

19   F.3d at 1282.  Further, "[t]hat a claimant testifies that his symptom is more disabling than would

20   normally be expected gives no valid reason to discount his testimony."  *Swenson v. Sullivan*, 876

21   F.2d 683, 687 (9th Cir. 1989).  Here, the ALJ's failure to specify his reasons for rejecting

22   Chappell's symptom testimony prevents this Court from being able to determine whether the

23

24        [2] While it would be possible to try to "comb the administrative record to find specific
     conflicts" between Chappell's symptom testimony and the other evidence in the record to try to
25   find support for the ALJ's conclusory rejection of Chappell's symptoms testimony, courts are not
     permitted to do so.  *See Brown-Hunter*, 806 F.3d at 494 ("[O]ur decisions make clear that we may
26   not take a general finding—an unspecified conflict between Claimant's testimony . . . and her
     reports to doctors—and comb the administrative record to find specific conflicts.") (citation
27   omitted).  This is because courts are "constrained to *review* the reasons *the ALJ* asserts."  *Connett
     v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (emphasis added).  Courts are prohibited from
28   guessing as to what those reasons may have been.

1   rejection violated any of these prohibitions, and thus prevents the Court from conducting a

2   meaningful review of the ALJ's decision.

3       Accordingly, the Court finds that the ALJ failed to provide "clear and convincing

4   reasons" for rejecting Chappell's symptom testimony and that this constitutes reversible legal

5   error.

6       The Commissioner's arguments to the contrary are not persuasive.  The Commissioner first

7   argues the requirement in the Ninth Circuit that an ALJ must provide "clear and convincing

8   reasons" is inconsistent with the relevant statutes and regulations.  *See* Docket. No. 19 at 5 n.3.

9   This contention has no impact on the Court's analysis, because the Ninth Circuit's holding that an

10  ALJ's rejection of a non-malingering claimant's symptom testimony must be supported by "clear

11  and convincing reasons" is controlling and the Court, therefore, must apply it here.

12      The Commissioner next argues, conclusorily, that the ALJ *did* satisfy the "clear and

13  convincing reasons" requirement because the ALJ "reasonably considered Plaintiff's subjective

14  symptom testimony, finding it not entirely consistent with the medical evidence of record."

15  Docket No. 19 at 7.  Defendant, however, does not point to any portion of the ALJ's decision

16  where the ALJ *specifically* identified the symptom testimony by Chappell that he found to be not

17  credible and the specific evidence that led him to that conclusion.  As noted above, the "clear and

18  convincing reasons" requirement is not satisfied with general findings and instead requires a level

19  of specificity that permits meaningful review of the ALJ's grounds for rejecting the claimant's

20  symptom testimony.  *See Brown-Hunter*, 806 F.3d at 494 ("We cannot review whether the ALJ

21  provided specific, clear, and convincing reasons for rejecting [the claimant's] pain testimony

22  where, as here, the ALJ never identified *which* testimony she found not credible, and never

23  explained *which* evidence contradicted that testimony.") (emphasis in the original).  That level of

24  specificity is absent here.

25      Finally, the Commissioner argues that an "ALJ cannot be required to believe every

26  allegation of [disability], or else disability benefits would be available for the asking," Docket No.

27  19 at 6.  This argument misunderstands the nature of Chappell's challenge to the ALJ's

28  determination.  Contrary to the Commissioner's contention, Chappell does not argue that the ALJ

United States District Court
Northern District of California

13

was *required to accept* his allegations of disability.  Chappell argues, instead, that the ALJ was *required to justify* his rejection of his symptom testimony with "clear and convincing reasons" and that this failure constitutes reversible error; Chappell's argument is consistent with the law in the Ninth Circuit.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("Where objective medical findings establish the existence of medical impairment, but a claimant testifies that she experiences pain at a higher level, the Secretary is free to disbelieve that testimony.  The Secretary must, however, make a specific and justifiable finding that the claimant's testimony is not credible.").

Having concluded that the ALJ erred in failing to provide "clear and convincing reasons" for rejecting Chappell's symptom testimony, the Court next considers whether that error was harmless.  An error is harmless where it is "inconsequential to the ultimate nondisability determination."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation and internal quotation marks omitted).

Where the "ALJ found generally that the claimant's testimony was not credible, but failed to identify which testimony she found not credible and why," the ALJ's error was "not harmless because it precludes [courts] from conducting a meaningful review of the ALJ's reasoning." *Brown-Hunter*, 806 F.3d at 489.  As discussed above, here, the ALJ failed to specify the basis for his rejection of Chappell's symptom testimony, which precludes meaningful review of the ALJ's decision.  This alone is sufficient to find under *Brown-Hunter* that the ALJ's error was not harmless.

The ALJ's error was not harmless for another, independent reason.  As discussed in more detail below, if the ALJ had considered Chappell's symptom testimony at step five, then he would have been required to find Chappell disabled.

Accordingly, the Court concludes that Chappell has shown that the ALJ erred in rejecting his symptom testimony without providing clear and convincing reasons for doing so, and it **GRANTS** Chappell's motion for summary judgment as to this issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   Whether remand should be for further proceedings or an award of benefits

A court has discretion "to remand a case either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (citation omitted).  Courts "generally remand for an award of benefits only in rare circumstances, where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (citations and internal quotation marks omitted).

Chappell requests that the Court exercise its discretion to remand for an award of benefits instead of additional proceedings because the requirements of the "credit-as-true" rule are satisfied here.  Docket No. 20 at 6-7.

The Commissioner argues, conclusorily, that remand should be for additional proceedings because remand for an award of benefits under the credit-as-true rule is appropriate only in "rare" circumstances.  Docket No. 19 at 7-8.

A court may remand for an award of benefits "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited[.]"  *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citation and internal quotation marks omitted).  In this circumstance, "[courts] will not remand solely to allow the ALJ to make specific findings regarding that testimony.  Rather, [courts] will . . .  take that testimony to be established as true."  *Id.* (citation and internal quotation marks omitted).  This is referred to as the "credit-as-true rule," which is "designed to achieve fairness and efficiency."  *Id.*  The Ninth Circuit has justified the credit-as-true rule as follows:

> We believe [that this] rule promotes the objectives we have identified in prior disability cases.  Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from reaching a conclusion first, and then attempting to justify it by ignoring competent evidence in the record that suggests an opposite result.  It helps to ensure that pain testimony will be carefully assessed and its importance recognized.  Moreover, it avoids unnecessary duplication in the administrative hearings and reduces the administrative burden caused by requiring multiple proceedings in the same case.  Perhaps most important, by

15

ensuring that credible claimants' testimony is accepted the first
time around, the rule reduces the delay and uncertainty often found
in this area of the law, and ensures that deserving claimants will
receive benefits as soon as possible. As already noted, applicants
for disability benefits often suffer from painful and debilitating
conditions, as well as severe economic hardship. Delaying the
payment of benefits by requiring multiple administrative
proceedings that are duplicative and unnecessary only serves to
cause the applicant further damage—financial, medical, and
emotional. Such damage can never be remedied. Without
endangering the integrity of the disability determination process, a
principal goal of that process must be the speedy resolution of
disability applicants' claims. At the same time, the rule does not
unduly burden the ALJs, nor should it result in the wrongful award
of benefits . . . [I]f grounds for [concluding that a claimant is not
disabled] exist, it is both reasonable and desirable to require the
ALJ to articulate them in the original decision.

*Id.* (citation and internal quotation marks omitted) (alterations in the original).

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. That being said, if a claimant is otherwise entitled to an immediate award of benefits under the credit-as-true rule, a court may nevertheless "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *See id.* at 1021.

Here, Chappell satisfies all three requirements of the credit-as-true rule. First, there is no need to develop the record or convene further administrative proceedings. The Commissioner argues, conclusorily, that "the proper remedy is a remand for further administrative proceedings," Docket No. 19 at 7, but the Commissioner does not explain why he believes that to be the case, nor does he identify a specific reason why additional proceedings are necessary, *see id.* at 7-8. Accordingly, the Court finds no reason to conclude that additional proceedings are necessary here. *See Garrison*, 759 F.3d at 1022-23 (rejecting argument that additional proceedings are necessary under the first prong of the credit-as-true test to allow the ALJ to "revisit" the testimony she

United States District Court
Northern District of California

1    rejected for legally insufficient reasons on the ground that "our precedent and the objectives of the

2    credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to

3    have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true

4    analysis").

5        Second, for the reasons discussed above, the ALJ failed to provide clear and convincing

6    reasons for rejecting Chappell's symptom testimony.

7        Third, if Chappell's improperly rejected testimony were credited as true on remand, it is

8    clear that the ALJ would be required to find Chappell disabled at step five.

9        At "step five of the five-step sequential inquiry, the burden shifts to the Commissioner to

10   prove that, based on the claimant's residual functional capacity, age, education, and past work

11   experience, she can do other work.  If she can, she is not disabled; if she cannot, she is disabled."

12   *Smolen*, 80 F.3d at 1291 (internal citation omitted).  Because the burden is on the Commissioner

13   "[a]t step five, the ALJ can call upon a [vocational expert] to testify as to: (1) what jobs the

14   claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the

15   national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir.1999).  "Hypothetical

16   questions posed to the vocational expert must set out all the limitations and restrictions of the

17   particular claimant, including, for example, *pain* and an inability to lift certain weights."  *See*

18   *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis added).

19       Here, the ALJ asked the vocational expert to testify as to what jobs Chappell could

20   perform based on a hypothetical that did *not* take into account Chappell's symptom testimony and,

21   based on the vocational expert's response that two jobs were available based on that hypothetical

22   (call out operator and telephone quotation clerk), the ALJ concluded that Chappell was not

23   disabled.

24       Specifically, the ALJ asked the vocational expert to state what jobs could be performed by

25   a person with Chappell's age and education and past job experience as a barber that is "limited to

26   less than the full range of light work," that is "lifting and carrying occasionally and frequently 10

27   pounds," is "sitting for six hours," is "standing for four hours," is "walking for four hours,"

28   "pushing or pulling is less than 10 pounds," "using foot controls only frequently with the left

United States District Court
Northern District of California

United States District Court
Northern District of California

foot," is "reaching overhead and reaching in other directions only occasionally bilaterally," is "climbing ramps and stairs occasionally," is "climbing ladders, ropes or scaffolds occasionally," and can "stoop, kneel, crouch or crawl occasionally." AR 68-69.  The vocational expert responded that the jobs of call out operator and telephone quotation clerk could be performed by such a person.  AR 69.

When asked to assume the same facts as the first hypothetical "except [with the] additional limitation of absent from work two days per month," AR 69, the vocational expert answered that the limitations "would preclude all competitive employment" because "absenteeism in the workplace for any reason over a period of time" would "eventually lead to the termination of the job." AR 69-70.

Chappell's attorney then asked the vocational expert to assume the same facts as the first hypothetical, except that the hypothetical claimant would require "15 minutes of break time in addition to the normally scheduled breaks."  AR 70.  The vocational expert responded that, "over time, if it's a chronic pattern, repeated, that would eventually cause the employee to be let go." AR 70.

Here, as noted, Chappell testified that that he experiences severe pain as a result of his impairments that significantly affects his ability to stand, walk, and lift, and that, sometimes, it renders him bedridden for a week.  Specifically, Chappell testified that he can stand maybe an hour to two hours at most before the pain "kicks in" and he needs to sit down for an hour or two, AR 58-60; he can walk slowly for about a mile or approximately 45 minutes before the pain begins and he has to stop exerting for the day, AR 60-61; and that he experiences "tremendous" gout pain when he has a gout episode every two to three weeks, AR 50, which forces him to be bedridden for an entire week, AR 62.  This testimony, which the ALJ did not incorporate into his hypothetical, raises the inference that Chappell would require at least two absences from work per month, or at least one extra fifteen-minute break per day, or both.

Had the ALJ incorporated this symptom testimony into his hypothetical, then the ALJ would have been required to conclude that Chappell was disabled in light of the vocational expert's testimony that a person that requires two absences from work per month, or an extra

fifteen-minute break per day, would not be able to find employment.  The Commissioner offers no basis to conclude otherwise.

Having concluded that Chappell satisfies all three prongs of the credit-as-true rule, the Court now considers whether it should nevertheless remand for additional proceedings on the basis that "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *See Garrison*, 759 F.3d. at 1021.  Here, The Commissioner does not point to any portion of the record to argue that Chappell is not actually disabled, *see* Docket No. 19 at 7-8, and the Court finds, based on its own review of the record, that it does not indicate that Chappell is not disabled.  Accordingly, the Court finds that remanding for an award of benefits is appropriate.  *See Garrison*, 759 F.3d at 1021 (holding that the "district court abused its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that Garrison is not, in fact, disabled").

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Chappell's motion for summary judgment.  It reverses the Commissioner's conclusion that Chappell has not been under a disability within the meaning of the Social Security Act from June 1, 2002, to the date of the ALJ's decision, and it remands with instructions for the calculation and award of benefits consistent with this order. The Clerk of Court is directed to enter judgment in favor of plaintiff and against defendant and to close this case.

This order terminates docket number 18.

**IT IS SO ORDERED.**

Dated: August 9, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California